[Cite as *In re D.J.*, 2018-Ohio-2759.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

In re D.J., C.J.

Court of Appeals No. L-18-1010

Trial Court No. JC 16256281

**DECISION AND JUDGMENT**

Decided: July 13, 2018

* * * * *

Laurel A. Kendall, for appellant.

Rebecca L. West-Estell, for appellee.

* * * * *

**SINGER, J.**

{¶ 1} Appellant, T.J., the father of minors, D.J. and C.J., appeals from the December 28, 2017 judgment of the Lucas County Court of Common Pleas, Juvenile Division, granting permanent custody of the two minor children to Lucas County Children's Services (hereinafter "LCCS"). For the reasons which follow, we affirm. On appeal, appellant asserts the following assignments of error:

I. The court erred to the prejudice of appellant when it found that the agency made reasonable efforts to reunify the children with the father when father had partially completed his case plan services, and time remained in the case.

II. The court's award of custody to the agency was against the manifest weight of the evidence.

{¶ 2} LCCS first became involved with this family in April 2016, as a result of an alleged assault of the mother by the father. The father was initially charged with domestic violence and assault and a temporary restraining order was issued. The charges were later dropped because the mother recanted her story, but the restraining order continued.

{¶ 3} A LCCS assessment worker assessed the children at the time of the assault. She was concerned the children, born prematurely in February 2016, had not gained sufficient weight and the parents did not appear to be meeting the basic needs of the children. She requested the mother document feeding and diaper changes and the mother complied. The mother moved into the home of the father's sister, who assisted the mother in caring for the children and getting the children to medical appointments.

During his initial evaluation, the father indicated that he has had rage issues and has been verbally and physically aggressive since childhood. He was later diagnosed with schizoaffective disorder, bipolar type.

2.

{¶ 4} In June 2016, another referral was made to LCCS with allegations the mother had returned to the family home, allowed a registered sex offender to live in the home, and the father had handled the children with excessive force. The mother admitted she had invited a man to live with her. While LCCS was successful in getting the man to leave the home, the caseworker was unable to obtain the mother's cooperation regarding the domestic violence between the parents and the need for establishing a safety plan for the children. The mother rejected the LCCS offer of protective day care and parenting classes. She also would not agree to bar the father from the home. Therefore, LCCS sought an ex parte emergency shelter care order based on allegations of neglect and dependency, which the court granted and the children were removed from the mother's home on June 20, 2016.

{¶ 5} LCCS filed a complaint in dependency and neglect on June 21, 2016, seeking temporary custody of the children, with the goal of reunification. On August 23, 2016, the children were adjudicated neglected and dependent and temporary custody was granted to LCCS. The father does not raise any assignments of error relating to the adjudication of the children as neglected and dependent.

{¶ 6} Following a review hearing held December 28, 2016, the juvenile court found that the father was compliant with domestic violence and mental health appointments and had not yet been referred for parenting classes. Five months later, on May 11, 2017, LCCS moved to extend temporary custody noting the father had "successfully completed domestic violence treatment," was "linked * * * for mental

3.

health services," and was referred for interactive parenting classes but, due to prior domestic violence issues, would be attending a class separate from the mother. On June 15, 2017, after a one-year review hearing, the juvenile court again found by clear and convincing evidence that temporary custody in LCCS should continue and that there "has been significant progress on the case plan * * * and there is reasonable cause to believe the children will be reunited with a parent or otherwise permanently placed within the period of the extension." The juvenile court also found the father had completed the domestic violence program, was compliant with his mental health treatment, and had been referred for parenting classes.

{¶ 7} However, on August 16, 2017, LCCS moved for permanent custody pursuant to R.C. 2151.353 and 2151.413(A), amending the motion on September 28, 2017. LCCS asserted it was entitled to permanent custody because 1) the children could not be placed with either of their parents within a reasonable time or should not be placed with their parents, R.C. 2151.414(B)(1)(a); 2) the children have been in the temporary custody of LCCS for a period of more than 12 months of the past 22-month period, R.C. 2151.414(B)(1)(d); and 3) permanent custody is in the best interest of the children, R.C. 2151.414(D). With respect to the father, LCCS further alleged that it had provided services because of the father's mental health and domestic violence against the mother. Because the father had recently stopped taking his medication, LCCS found the father's mental health had deteriorated. LCCS alleged the father had made threats to kill the caseworker and warned the caseworker the mother would abscond with the children at a

4.

visit. LCCS asserted that the father's chronic mental illness is so severe that it makes the father unable to provide an adequate permanent home for the children and he has demonstrated a lack of commitment to the children by failing to regularly support or visit the children and participate in the services provided. Furthermore, LCCS alleged the children have special needs, attend physical therapy, and have physical deformities which will require surgery in the future. The children have been placed together in a foster home, their needs are being meet, and they are doing well.

{¶ 8} The caseworker testified at the permanent custody hearing that despite the earlier findings that the father had complied with his case plan, he first began to be less consistent in complying with his mental health counseling and medication appointments after a missed appointment in March 2017. Furthermore, in June 2017, the caseworker became concerned that the father's mental health was deteriorating. She discussed the matter with the father and his therapist. The father acknowledged he had missed some appointments and stated he did not like his new therapist.

{¶ 9} Nonetheless, the father was referred to parenting classes in June 2017. The caseworker testified the father called the caseworker upset that he was starting parenting classes after the mother. He accused the caseworker of violating his rights, but the caseworker believed the issue was based more on his controlling behavior and his need to be first. Although he successfully completed five of the six classes, the caseworker removed the father from the program due to criminal charges filed against him in June 2017, alleging he had assaulted a woman, L.Y., who sometimes stayed at the family

5.

home, and he had passed bad checks. These charges were later dismissed when L.Y. recanted her accusations. The caseworker further testified she was concerned about the father's declining mental health during June-July, 2017, because he would leave messages for the caseworker posing as the mother and stating "she" wanted to give up her children. The caseworker recognized father's phone number and voice. He was also making accusations the mother was planning to kill the children, which led to increased restrictions on the mother's visitation. Later, L.Y. started calling from the father's phone number and leaving similar messages. Because of these events, the caseworker decided the father needed to concentrate solely on his mental health treatment.

{¶ 10} The caseworker testified that in late July 2017, the LCCS team had separate review meetings with the parents and the guardian ad litem. Consistent with the father's prior behavior, he was more focused on the mother than his children. The father attempted to show the caseworker an inappropriate video of L.Y., a minor, and the mother. The parenting education instructor indicated that while the father had been attentive to the children, he had issues with his language around the children when referring to the mother and there were concerns with his hygiene. The guardian ad litem also reported that she had to correct the father during a visitation because he would say inappropriate things about the mother. After that meeting, the LCCS team determined that it was necessary to file for permanent custody.

{¶ 11} The caseworker testified she visited the father in prison in October 2017, after he was incarcerated on charges of pandering sexually oriented material and unlawful

sexual contact with a minor. At that time he stated he had not been taking his medication although he was located on the medical floor. She believed that despite some indication in the records that he was working on his issues and had made some progress, he had not made sufficient progress to be capable of caring for his children. Furthermore, although he completed the batterer's counseling in early 2017, he had not learned to incorporate any of the training into his life. He would make disparaging comments about the mother to the caseworker and the mother reported another domestic violence incident when he had chased her and hit the door she was hiding behind so hard it created a hole in the door. The mother also told the caseworker the father spent her social security payments for his benefit and was still very controlling and emotionally abusive.

{¶ 12} The guardian ad litem also reported several specific comments made to her which confirmed the mental health instability noted in the father's mental health records. Furthermore, her meetings with the father were difficult because of his focus on the mother and others he blames for the removal of the children.

{¶ 13} The caseworker testified that the father was initially consistent with his visitation. However, over the six months prior to the permanent custody hearing, he missed a lot of visits and had none after October 2017, when he was incarcerated. The guardian ad litem reported the father's visitations began to wane in May 2017, and he visited the children only 7 out of the 20 scheduled visits from May 1, 2017, until his date of incarceration.

7.

**{¶ 14}** In its December 28, 2017, judgment entry, the trial court found, by clear and convincing evidence, that the "the children cannot be placed with either parent within a reasonable time and should not be placed with either parent," R.C. 2151.414(B)(1)(a). This finding was based on the court's findings that: 1) following the placement of the children outside their home, and the reasonable case planning and diligent efforts of LCCS to remedy the issues which caused the need for removal of the children, the parents had failed continuously and repeatedly to substantially remedy the conditions which caused the removal of the children in the first place, R.C. 2151.414(E)(1); 2) the "chronic mental illness, chronic emotional illness, physical disability, or chemical dependency of the parents is so severe that it makes the parents unable to provide an adequate permanent home for the child at the present time, and, as anticipated, within one year," R.C. 2151.414(E)(2); 3) "the parents have demonstrated a lack of commitment towards the children by failing to regularly support, visit, or communicate with the children when able to do so," R.C. 2151.414(E)(4); and that 4) "the ongoing domestic violence between the parents * * * makes reunification a risk to the children's health and safety," R.C. 2151.414(E)(16).

**{¶ 15}** The trial court's decision was based on the following factual findings. While the father's initial compliance with the case plan and his visitation were consistent, he became inconsistent beginning in March 2017, when his behavior began to deteriorate. The juvenile court found the father had not applied the lessons taught because he had incurred criminal charges of domestic violence and the mother reported numerous

8.

instances of emotional abuse and controlling behavior after the father had completed his domestic violence batterer's class. The father's visitation during the six months prior to trial was inconsistent, and he missed all visitations after October 5, 2017, when he was incarcerated.

{¶ 16} The court also found that it is in the best interest of the children to grant permanent custody to LCCS (R.C. 2151.414(D)). The trial court found the children were in need of a legally secure permanent placement, which could not be achieved without a grant of permanent custody to LCCS, because the father had not made significant progress in case plan services. The court found the father's mental health, domestic violence behavior, and criminal conduct continued to put the children at risk. The juvenile court found the children have physical abnormalities and developmental delays, to which the foster parents are attending, and the foster parents are bonded to the children and willing to adopt them.

{¶ 17} In his first assignment of error, the father argues the trial court erred by finding that the agency had made reasonable efforts to reunify the children because LCCS interfered with his ability to complete his parenting classes. He argues he had completed the case plan requirements of domestic violence batterer's class and mental health counseling. He also argues that because of his successful completion of part of the parenting program, it was reasonable to expect that he could have finished the program successfully had LCCS not removed him from the program. He asserts that he was removed based on false charges of an assault and that it was not until after he was

9.

removed from the parenting class that the caseworker expressed concerns about his mental health. He further argues both assault charges were dismissed and the misdemeanor charge of endangering children did not involve his own children. Furthermore, he argues, that after he was released from jail in April 2018, there would have been two months left before temporary custody would have terminated, during which time he could have retaken the parenting classes, but LCCS did not permit him to complete his case plan.

{¶ 18} Upon the filing of a motion for permanent custody pursuant to R.C. 2151.413, R.C. 2151.414(A) requires the juvenile court to conduct a hearing to first determine if there is clear and convincing evidence that one of the factors of R.C. 2151.414(B)(1) exists. Clear and convincing evidence, is the "measure or degree of proof which * * * will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus. On appeal, we consider whether the juvenile court "had sufficient evidence before it to satisfy the requisite degree of proof." *Ohio v. Schiebel*, 55 Ohio St.3d 71, 74, 564 N.E.2d 54 (1990), citing *Ford v. Osborne,* 45 Ohio St. 1, 12 N.E. 526 (1887), paragraph two of the syllabus.

{¶ 19} In this case, the court found R.C. 2151.414(B)(1)(a) applied (the child cannot or should not be placed with the father within a reasonable time) because it was required to do so if it found there was clear and convincing evidence of any one of the factors listed in R.C. 2151.414(E). The court found the following four factors existed:

10.

R.C. 2151.414(E)(1), (2), (4), and (16). The father challenges only the findings relating to the existence of the R.C. 2151.414(E)(1) factor, which is that "notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing" removal of the child. Because the court found there was clear and convincing evidence of four factors, any error regarding one of those factors would not be prejudicial error. *Compare In re J.B.*, 6th Dist. Sandusky Nos. S-14-005, S-14-006, S-14-007, S-14-008, S-14-009, S-14-012, S-14-013, S-14-014, 2015-Ohio-460, ¶ 69.

{¶ 20} Even if we consider appellant's argument, however, it lacks merit. The children were removed on June 20, 2016, and the agency moved for permanent custody in August 2017. While the General Assembly determined temporary custody orders should be resolved within 24 months, R.C. 2151.353(G) and 2151.413(D)(1), it also gave the agency with temporary custody the right to move at any time for a final dispositional order, R.C. 2151.353(F)(2). While LCCS asserted that both the R.C. 2151.414(B)(1)(a) and (d) factors applied to this case, the court only found the R.C. 2151.414(B)(1)(a) factor existed. Therefore, we reject appellant's argument that the agency had to wait longer to file its motion for permanent custody.

{¶ 21} Furthermore, we find that there was clear and convincing evidence to support the court's finding the children could not be placed with the father within a reasonable time or should not be placed with him. The father had approximately

11.

18 months to work on reunification before the hearing on the motion to terminate his parental rights. Although the juvenile court found the father had complied with the case plan services in June 2017, LCCS determined at a July 2017 review meeting that despite the father's participation in case plan services, his mental health did not significantly improve and he was unable to alter his behavior, as evidenced by the caseworker's testimony of examples of the father's inappropriate behavior in June-July 2017, and the pending criminal charges. Removal of the father from parenting classes was due to concerns regarding the deterioration of his mental health and not his inability to successfully complete the parenting class.

{¶ 22} Therefore, the record does not support the father's allegation that LCCS was interfering with his ability to complete his case plan services. We find the father's first assignment of error not well-taken.

{¶ 23} In his second assignment of error, the father asserts that the award of custody to the agency was contrary to the manifest weight of the evidence. He argues that the false allegations of an assault and the resulting temporary protection order required him to leave the home and that it was the mother's inability to care for the children which caused their removal. Meanwhile, the father was completing his services and the mother recanted her claims of abuse. The father argues there was sufficient evidence presented to find he had made a good faith effort to comply with the agency recommendations.

12.

{¶ 24} A challenge to the weight of the evidence questions whether or not the greater amount of credible evidence was admitted to support the findings of fact. *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 17-21; *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). When weighing the evidence, the court of appeals must consider whether the evidence in a case is conflicting or where reasonable minds might differ as to the inferences to be drawn from it, consider the weight of the evidence, and consider the credibility of the witnesses to determine if "the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Id.* quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). As a reviewing court, we presume the factfinder properly assessed the evidence. *Eastley* at ¶ 21, quoting *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80, fn. 3, 461 N.E.2d 1273 (1984) (citation omitted).

{¶ 25} Upon a review of the evidence, we cannot say that the juvenile court lost its way in its evaluation of the evidence and created such a manifest miscarriage of justice that its judgment should be reversed. Appellant argues that the children were removed due to the mother's inability to care for the children. However, the children were first removed from the father's care by the temporary restraining order issued because of the alleged domestic violence charges. Furthermore, when the children were removed from the mother's care, they were not placed with the father due to his mental health assessment and domestic violence charges. The evidence was undisputed that the

13.

father's behavior in the summer of 2017 reflected that the case plan services which the father had fully or partially completed had not altered the fact that issues relating to his mental health and domestic violence prevented him from remedying reasons for the continued removal of the children from his care. Participation in case plan services, even with successful completion of some aspects of the case plan, does not indisputably demonstrate that the parent remedied the issues which caused removal. There must be evidence that the parent was able to incorporate the information learned in the case plan services into his daily life. In this case, the manifest weight of the evidence establishes that the father did not. Therefore, the father's second assignment of error is not well-taken.

{¶ 26} Having found that the trial court did not commit error prejudicial to appellant and that substantial justice has been done, the judgment of the Lucas County Court of Common Pleas, Juvenile Division, is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J.                    _____
                                                                                            JUDGE

Arlene Singer, J.

                                                                                 _____
Thomas J. Osowik, J.                                                                           JUDGE
CONCUR.

                                                                                 _____
                                                                                            JUDGE

This decision is subject to further editing by the Supreme Court of
Ohio's Reporter of Decisions.  Parties interested in viewing the final reported
version are advised to visit the Ohio Supreme Court's web site at:
http://www.supremecourt.ohio.gov/ROD/docs/.